In re James E. SIMMS and Sonja L. Simms, Debtors.

Bankruptcy No. 91–30843–S–13.

United States Bankruptcy Court, N.D. Ohio, Western Division.

Nov. 15, 1994.

Anthony B. DiSalle, Trustee, Toledo, OH.

Nicholas W. Jones, Delaware, OH, for debtors.

Robert G. Trusiak, Toledo, OH, for I.R.S.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon Debtor's Objection to the Amended Proof of Claim filed by the Internal Revenue Service (hereafter "IRS"); the United States' Opposition to Debtors' Objection to Proof of Claim; and the supplemental memoranda filed by both parties. This Court has reviewed the arguments of Counsel, exhibits, relevant statutory and case law, as well as the entire record of the case. Based upon that review and for the following reasons, this Court finds that Debtor's Objection to IRS's claim shall be Overruled.

### FACTS

The issues presented in the present Chapter 13 case concern a related Chapter 7 case in the Southern District of Ohio, *In re Simka, Inc.*, Case No. 2–89–06107. *Simka* involved a corporation for which the Debtors in the present Chapter 13 case have concurrent federal tax liabilities. The debtor corporation, Simka, Inc., had incurred non-dischargeable debts called "trust fund liabilities" when it failed to hold in trust for the IRS federal taxes withheld from employees'

---

payroll earnings. The Debtors in the present case are also individually liable for the trust fund liabilities. When Simka, Inc. filed for Chapter 7 relief, the IRS entered a claim for Twenty Eight Thousand Ninety Five and 03/100 Dollars ($28,095.03) which reflected both trust fund liabilities and non-trust fund liabilities owed. On April 19, 1993 the Court in *Simka* approved a non-designated payment to the IRS totaling ($14,102.76). Of this payment, the IRS designated Four Thousand Four Hundred Thirteen and 75/100 Dollars ($4,413.75) toward trust fund liabilities, pursuant to IRS regulations. The remainder was designated toward non-trust fund liabilities also owed by Simka, Inc., but not owed by the Debtors in the present case.

The relative application of the funds applied between trust fund and non-trust fund accounts is the source of dispute in this Chapter 13 case. The Debtors originally filed a Chapter 13 petition on March 6, 1991, before the liquidation proceeding of Simka, Inc. On May 10, 1991 this Court approved a plan in which priority tax liabilities were to be paid in full and unsecured creditors would recover approximately thirty-three percent (33%) of their claims. On July 24, 1991, the IRS filed a proof of claim in the Chapter 13 case for federal priority tax liabilities of Twenty Nine Thousand Nine Hundred Thirty Two Dollars and 66/100 Dollars ($29,-932.66), notwithstanding the anticipated *Simka* liquidation. This amount includes the trust fund liabilities not paid under the *Simka* liquidation for which the Debtors have a continued responsibility to pay. It is undisputed that unpaid trust funds liabilities of Simka, Inc. are also priority tax liabilities for Debtors. Debtors did object to the amount of the claim, however, asserting that it needed to be amended to reflect the receipt of the Chapter 7 payment made by Simka, Inc.

The original IRS proof of claim did not reflect a Four Thousand Four Hundred Thirteen Dollars and 75/100 ($4,413.75) allocation the IRS claims to have since designated toward the concurrent tax liability of the Debtors. However, the IRS did reduce its proof of claim on or about April 26, 1994, reducing the original claim of Twenty Nine Thousand Nine Hundred Thirty Two and 66/100 Dollars ($29,932.66) by Eleven Thousand Seven Hundred Thirty and 39/100 ($11,730.39), for a claim totaling Eighteen Thousand Two Hundred Two and 27/100 Dollars ($18,202.27). The IRS states in its memorandum that part of the reduction was a credit for the Four Thousand Four Hundred Thirteen Dollars and 75/100 ($4,413.75) designation to the outstanding trust fund liability.

The Debtors' Objection to the IRS's amended proof of claim requests that the full Fourteen Thousand One Hundred Two and 76/100 Dollars ($14,102.76) Chapter 7 payment be credited against the Chapter 13 claim, thus reducing the claim to Four Thousand Eight Hundred Ninety Nine and 51/100 Dollars ($4,899.51). The Debtors, however, erred in computing the amount requested. Eighteen Thousand Two Hundred Two and 27/100 Dollars ($18,202.27) subtracted from Fourteen Thousand One Hundred Two and 76/100 Dollars ($14,102.76) equals to Four Thousand Ninety Nine and 51/100 Dollars ($4,099.51).

The United States opposes the Debtors' objection to the proof of claim, asserting that the payments were made involuntarily, and therefore were not subject to designation by the taxpayer. Thus, the IRS asserts, the Debtors in the present case could not claim to have a larger portion of the corporate Chapter 7 distribution designated as payment on the trust fund liability also owed by the Debtors.

A hearing was held in which the United States contended that the Court lacked jurisdiction because the Debtors failed to properly serve the United States. The Court ordered the Debtors to serve the Attorney General of the United States with a copy of his objection. Also, the Court ordered both parties to file supplemental memoranda.

## *LAW*

**11 U.S.C. § 1123(b)(5) Contents of Plan**

(b) Subject to subsection (a) of this section, a plan may—

(5) include any other appropriate provision not inconsistent with the applicable provisions of this statute.

**11 U.S.C. § 105(a) Power of Court**

(a) The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent abuse of process.

## DISCUSSION

The issue presented in this case is whether the Supreme Court's holding in *United States v. Energy Resources Co.*, 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990), should be extended to the present case where the Chapter 13 Debtors seek to have tax payments made in a related Chapter 7 case reallocated for the benefit of the Chapter 13 reorganization. The allowance or disallowance of claims against the estate and determinations as to the dischargeability of particular debts are core proceedings. 28 U.S.C. § 157. For the reasons set forth below, this Court declines to extend *Energy Resources* to the issues in this case.

*Energy Resources* concerned a Chapter 11 plan, wherein the Bankruptcy Court reallocated the Internal Revenue Service's (hereafter "IRS") designation of payments between "trust fund" liabilities and "non-trust fund" liabilities. "Trust fund" liabilities are funds employers withhold from their employees paychecks representing employees' personal income taxes and Social Security taxes. 26 U.S.C. §§ 3102(a). Federal law requires employers to hold these funds in trust for the United States. 26 U.S.C. § 7501(a). Should employers fail to pay trust fund taxes, the government may collect an equivalent sum from the officers or employees responsible for collecting the tax. 26 U.S.C. § 6672. The Chapter 11 plan in *Energy Resources* included a provision that payments made to the IRS would be first applied to trust fund liabilities, then to non-trust fund liabilities. *Energy Resources* at 547. The Bankruptcy Court approved the plan over the IRS's objection, holding that the reallocation was necessary to the Chapter 11 reorganization. *Id.* The IRS was obviously concerned that if the Chapter 11 plan failed in the future, and upon liquidation the corporation could not pay the remainder of the tax liabilities, the only debts remaining would be non-trust fund liabilities for which there were no other parties liable with which to seek payment. *Id.* at 551.

The IRS argued that payments made under the Chapter 11 plan are "involuntary payments," and therefore not subject to designation by the taxpayer. *Id.* at 548. Thus, the payments should be allocated under the IRS's regulations, where a portion of the payments would be designated to non-trust fund liabilities. The Supreme Court held that the Bankruptcy Court does indeed have the authority under § 105 of the Bankruptcy Code to order the IRS to apply the payments to trust funds liabilities, "if the bankruptcy court determines that this designation is necessary to the success of a reorganization plan." *Id.* at 549.

The present case differs from that of *Energy Resources* in a number of ways. First, *Energy Resources* was a Chapter 11 case. The case herein is a Chapter 13. Second, in *Energy Resources*, the IRS would receive payment in full of both trust fund and non-trust fund liabilities under the plan in that case. *Id.* at 549. In the present case, the corporation which was primarily liable for the trust fund liabilities has already gone through a Chapter 7 liquidation, rendering unpaid debts against it uncollectible. Third, in *Energy Resources*, the payments to be designated were payments made in that same case. In the present case, the payments to be reallocated by the Court are payments made in a related Chapter 7 case.

This Court has no reason to believe that the holding in *Energy Resources* would not apply in some Chapter 13 cases. Indeed, such a holding was made in *In re Klaska*, 152 B.R. 248 (Bankr.C.D.Ill.1993), where the Court allowed a Chapter 13 plan where the debtor would first pay the entire income tax obligation, then start making payments on employee taxes. *Id.* at 250. This would result in the debtor's former partner paying a larger portion of the tax obligation. *Id.*

The *Klaska* Court emphasized, however, that though the debtors were hoping to decrease the amount they would pay to the IRS, they were not seeking to reduce the amount that would be paid to the IRS. *Id.* at 251. The IRS would receive 100% under the plan, and indeed everyone to be paid under the plan would get 100% sooner. *Id.* at 250.

The IRS would not fare so well in the case at bar, where the IRS would not receive any payment for the non-trust fund liabilities which would be rendered unpaid by the proposed re-allocation. This Court is unable to locate any case following *Energy Resources* in which the IRS would not receive payment in full under the reorganization plan to be made possible by the Court's reallocation. Indeed, this was a chief concern of the Court in *U.S. v. Pepperman,* 976 F.2d 123 (3rd Cir.1992), where the Court refused to apply the *Energy Resources* holding to the Chapter 7 liquidation. As the Court explained:

[A]lthough trust fund taxes technically are non-dischargeable in bankruptcy, *see* 11 U.S.C. § 523(a)(1)(A), corporate dissolution has the practical effect of discharging the corporate debtor from unpaid tax liabilities, *[U.S. v.] Sotelo,* 436 U.S. [268] at 278, 98 S.Ct. [1795] at 1801 [56 L.Ed.2d 275 (1978)]. Thus, unlike the situation presented in *Energy Resources,* permitting the IRS to allocate such payment to non-trust fund liability first cannot be characterized as an *added* assurance that its tax claim will be satisfied. There is far less assurance in a Chapter 7 proceeding that the corporate debtor will satisfy its debt in full. *Id.* at 130. (Emphasis in original).

A similar concern was expressed by the District Court in *In re Suburban Motor Freight, Inc.,* 161 B.R. 640 (S.D.Ohio 1993), where the Court refused to reallocate the IRS's designation of Chapter 7 payments for the benefit of the sole owner of the corporation debtor. *Id.* at 643. The *Suburban* Court also noted that corporate dissolution has the practical effect of discharging taxes technically not dischargeable in bankruptcy, and that IRS discretion may be one of the few protections the government possesses. *Id.* at 644.

This Court is also reluctant to apply *Energy Resources* to the situation were the payments to be reallocated are from a separate bankruptcy case where such reallocation is not necessary for reorganization. In *In re Brooks,* 129 B.R. 484 (Bankr.N.D.Ohio 1991), the Court was faced with a similar situation to the case herein. Chapter 13 debtors moved for a determination that their tax liability payment in a previous Chapter 7 case be designated as trust fund payments as allegedly provided in the Chapter 7 order. The Court simply held that reorganization was not at issue in the related Chapter 7 case, thus there was no counterweight to the IRS's policy, and no reason to interfere with the IRS's allocation. *Id.* at 487.

The decision in *Brooks* was followed by the Court in *In re Gregory Engine and Mach. Services, Inc.,* 135 B.R. 807 (Bankr.E.D.Tex. 1992). As the *Gregory* Court explained, "The implicit holding of the [*Brooks*] court is clearly that the benefit to be realized by Chapter 13 debtors in another proceeding is not a significant enough concern to justify an expansion of *Energy Resources.*" *Id.* at 810. In *Gregory,* the sole owners of a Chapter 7 debtor corporation moved for a reallocation of payments to the IRS. *Id.* at 808. The owners would thus receive a dollar for dollar reduction in their personal liability. *Id.* This is again similar to the case herein, where the Chapter 13 debtors would receive a dollar for dollar benefit with the proposed reallocation. The Court explained:

This Court is convinced that [the *Energy Resources*] holding can not be expanded to take into consideration reorganization needs in other cases and in other contexts. That type of expansion would unfairly encroach on the authority of the Internal Revenue Service to apply payments in accordance with its rules and procedures in the discharge of its statutory duty to administer the tax laws of the nation. The Court can find no language in the preceding cases which would indicate otherwise. *Id.* at 810.

This Court is likewise convinced in the case at bar that the reallocation of the related Chapter 7 case for the benefit of the present

case would be an undue expansion of *Energy Resources.*

Finally, even if it could be presumed that this Court has the authority to reallocate the payments as the Debtors request, this Court would in its discretion refuse to do so in this case as a matter of public policy. Allowing a reallocation where the corporate debtor has or will become insolvent would in effect give operators of distressed corporations the ability to gamble with the employees wage withholdings in hopes of improving cash flow. When the gamble does not pay off, the person responsible for the funds to be held in trust could then escape liability by simply showing that they could not reorganize under a Chapter 13 unless the trust fund liabilities were paid first by the corporate debtor. Such a showing would not be difficult, as trust fund liabilities could be quite large for an individual debtor. This would be especially disconcerting were, in the most likely situation, the official responsible is also the owner of the corporation, who has much to gain personally if the gamble pays off.

This judicially approved gamble would clearly be in contrast to the public policy protecting wage withholding trust funds forcefully put in place by Congress in the Internal Revenue Code. Such a holding would also be contrary to the priority scheme contemplated in the Bankruptcy Code. As the Court in *Pepperman* noted, "Were that effected, the general rule that government is entitled to priority over general creditors for the payment of [trust fund] liabilities would be weakened." *Pepperman* at 130–131. Accordingly, the objection of the debtors to the IRS claim will be overruled.

Another issue presented in this case was whether service was or should be obtained upon the Attorney General of the United States. Debtors' memoranda is ambiguous as to whether such service was effected as ordered by this Court. Because the Court is overruling the objection of the Debtor on other grounds, the Court finds this issue moot.

In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regard-

less of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that the Objection to Claim by Debtors be, and is hereby, *OVERRULED.*